UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOLOGIC COMPUTER SYSTEMS, INC.
a Michigan corporation,

|  |  |
|---|---|
|  | Case No. 2:10-cv-13569 |
| Plaintiff, | Hon. Arthur J. Tarnow |
| v. | Magistrate Judge R. Steven Whalen |

JOHN D. MACLEAN, et al.,

Defendants.

---

Brian H. Rolfe P52680
Faith M. Gaudaen P59469
KEMP KLEIN LAW FIRM
*Attorneys for Plaintiff*
201 W. Big Beaver Road, Ste 600
Troy, MI 48084
248-528-1111
brian.rolfe@kkue.com

Product Support International
c/o John D. MacLean
7365 Cherry Brook Dr.
Reynoldsburg OH 43068

David Leneghan
200 Treeworth Blvd., Ste 200
Broadview Heights OH  44147
440-223-4260
leneghanlaw@yahoo.com
*Attorney for Defendant AGPS, only*

Thomas P. Heed P66991
39555 Orchard Hill Place, Ste 600
Novi MI 48375
248-465-8655
theed@heedlawgroup.com
 *Co-Counsel* for Defendants John D.
MacLean, AMW Machine Control, Inc.,
AMW Group, LLC, Mark Williams and
Alan Williams

---

**PLAINTIFF GEOLOGIC COMPUTER SYSTEMS, INC.'S
MOTION AND BRIEF FOR ORDER OF CONTEMPT FOR VIOLATION OF
<u>INJUNCTION AND ORDER ENFORCING SETTLEMENT AGREEMENT</u>**

# TABLE OF CONTENTS

INDEX TO AUTHORITIES ..................................................................ii

STATEMENT OF QUESTION PRESENTED ....................................v

PLAINTIFF GEOLOGIC COMPUTER SYSTEMS, INC.'S
MOTION FOR ENTRY OF AN ORDER OF CONTEMPT
FOR VIOLATION OF INJUNCTION AND ENTRY OF AN
ORDER ENFORCING SETTLEMENT AGREEMENT .....................................1

BRIEF IN SUPPORT OF MOTION FOR ENTRY OF AN
ORDER OF CONTEMPT FOR VIOLATION OF INJUNCTION
AND ENTRY OF AN ORDER ENFORCING SETTLEMENT
AGREEMENT        ..................................................................2

I.     INTRODUCTION ..................................................................2

II.    STATEMENT OF FACTS ..................................................................3

    A.    Background Facts ..................................................................3

    B.    Injunction..................................................................5

    C.    Defendants' Breach of the Settlement Agreement............................8

    D.    Defendants' Continued Sale and Support of Software .....................10

III.   STATEMENT OF LAW ..................................................................12

    A.    Enforcement of Settlement Agreement..............................................12

    B.    Defendants' Violation of the Injunction ...........................................17

    C.    Appointment of a Receiver is Appropriate .......................................20

IV.    CONCLUSION ..................................................................24

Certificate of Service ..................................................................25

i

## INDEX TO AUTHORITIES CITED

**Cases**

*Aro Corp. v. Allied Witan Co.*
   531 F.2d 13658, 1371 (6th Cir.) .................................................................12

*Bamerilease Capital Corp. v Nearburg*
   958 F.2d 150, 152 (6th Cir. 1992) ..............................................................13

*Band v. Livonia Associates*
   176 Mich.App. 95, 105, 439 N.W.2d 285 (1989).....................................22

*Bowater N. Am. Corp. v. Murray Mach.*
   773 F.2d 71, 76 (6th Cir. 1985) ..................................................................13

*Brock v. Scheuner Corp.*
   841 F.2d 151, 154 (6th Cir. 1988) ..............................................................12

*Clinton St. Bethlehem Church v City of Detroit*
   484 F.2d 185 (6th Cir 1973) ........................................................................12

*Echol v Nimmo*
   586 F.Supp 467 (DC Mich 1984) ...............................................................12

*Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*
   340 F.3d 373, 379 (6th Cir. 2003) .......................................................17, 18

*Fed. Nat. Mortgage Ass'n v. Mapletree Investors Ltd. P'ship*
   10–CV–10381, 2010 WL 1753112, at *3 (E.D.Mich. Apr. 30, 2010).....................21

*G.G. Marck and Associates, Inc. v. Peng*
   309 Fed. Appx 928 (6th Cir. 2009).............................................................13

*Kukla v. Liberty Mutual Ins. Co.*
    483 F.2d 619, 621 (6th Cir. 1973) ........................................................13

*Kukla v. National Distillers Prods. Co.*
    483 F.2d 619, 621 (6th Cir. 1973) ........................................................13

*Liberte Capital Grp., LLC v. Capwill*
    462 F.3d 543, 551 (6th Cir.2006) ........................................................20

*N.L.R.B v. Local 282, Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen and*
    *Helpers of America*
    428 F.2d 994 (2nd Cir. 1970).............................................................18

*Odomes v. Nucare, Inc.*
    663 F.2d 246, 252 (6th Cir. 1981) ........................................................13

*Petitpren v. Taylor School Dist.*
    104 Mich.App. 283, 294, 304 N.W.2d 553 (1981)....................................22

*PNC Bank, Nat. Ass'n v. Goyette Mechanical Co., Inc*.
    15 F.Supp.3d 754 (E.D. Mich. 2014) ....................................................21

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*
    469 Mich. 362, 375; 666 NW2d 251 (2003) ...........................................13

*Rory v. Continental Ins. Co.*
    473 Mich. 457, 464; 703 NW2d 23 (2005) .............................................13

*Santibanez v. Wier McMahon & Co.*
    105 F.3d 234, 241 (5th Cir.1997) ........................................................20

*Steel v Wilson*
    29 Mich.App. 388, 395, 185 N.W.2d 417 (1971)....................................12

*Syntek Semiconductor Co., Ltd. v Microchip Tech. Inc.*
   307 F.3d 775, 779-80 (9th Cir 2002) ........................................................................4

*U.S. v. Cunningham*
   599 F.2d 120 (6th Cir. 1979) ............................................................................17, 18

**Statutes**

18 U.S.C. § 401 .................................................................................................................17

**Rules**

Fed.R.Civ.P. 66 .................................................................................................................20

**Other Authorities**

12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983
   (1973) .........................................................................................................................20

## <u>STATEMENT OF QUESTION PRESENTED</u>

Should the Court order the Defendants Alan Williams, Mark Williams and their Company AMW Machine Control, Inc. in contempt of court for violating this Court's injunction which prevents Defendants' sale of Plaintiff's software?

Plaintiff answers "Yes."

Defendants answer "No."

Should this Honorable Court compel Defendants Alan Williams, Mark Williams, AMW Machine Control, Inc. and AMW Group, LLC to turn over all copies of their software in order to enforce the settlement agreement entered between the parties?

Plaintiff answers "Yes."

Defendants answer "No."

**PLAINTIFF GEOLOGIC COMPUTER SYSTEMS, INC.'S
MOTION FOR ENTRY OF AN ORDER OF CONTEMPT FOR
VIOLATION OF INJUNCTION AND ENTRY OF
<u>AN ORDER ENFORCING SETTLEMENT AGREEMENT</u>**

NOW COMES Plaintiff Geologic Computer Systems, Inc., by and through its attorneys, KEMP KLEIN LAW FIRM, and for its Motion for Entry of an Order of Contempt for Violation of an Injunction and Entry of an Order Enforcing Settlement Agreement relies on the facts and law as stated in Plaintiff's Brief in Support of Motion for Entry of an Order of Contempt for Violation of an Injunction and Entry of an Order Enforcing Settlement Agreement along with the exhibits attached hereto. Plaintiff sought concurrence on this motion May 3, 2018. Defendant's counsel refused to hold a conference with Plaintiff's counsel until May 7, 2018. Concurrence was not granted.

1

**BRIEF IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER OF
CONTEMPT FOR VIOLATION OF INJUNCTION AND ENTRY OF
<u>AN ORDER ENFORCING SETTLEMENT AGREEMENT</u>**

## I.      <u>INTRODUCTION</u>

After nearly six (6) years of costly litigation, a failed attempt at settlement, several motions for summary disposition, the filing of bankruptcy by four (4) of the Defendants, and the entry of an injunction preventing Defendant's from selling Plaintiff's software, this case allegedly settled in February of 2017.  (**Exhibit 1**, Court Order of United States Bankruptcy Court, Western District of Michigan Case #16-02157, Doc# 100).  However, as Defendants failed and refused to even make the first payment under the Settlement Agreement, GeoLogic Computer Systems, Inc. ("GeoLogic") was forced to foreclose on its interests in Defendants' software, reinstate the injunction with this Court and seek to obtain the software that was escrowed by the Defendants.

Unfortunately, Defendants have failed and refused to comply with the reinstated Injunction.  They continue to support and sell the software, which the Injunction specifically prohibits.  Further, upon obtaining the software from the escrow agent, GeoLogic has learned that Defendants also violated the Settlement Agreement by failing to deposit a full copy of the software in escrow.  Instead, Defendants placed in escrow only a portion of the software, such that GeoLogic could never license it, without rewriting the portions Defendants stripped from the

code.  In addition, the code placed in escrow does not contain the executable code or the necessary code to be able to compile it into executable code.   Further, GeoLogic has learned that Defendants intend to sell certain software and/or portions of AMW Machine Control, Inc. that used to own the software to a third party.

As Defendants have continued to play games, ignoring the injunction in place and blatantly breaching the Settlement Agreement, GeoLogic is yet again forced to seek relief from this Court.  Contempt is particularly appropriate in this matter due to Defendants' egregious behaviors, not only in stealing GeoLogic's code, but in their defense to this matter.  Their behavior now in supporting and selling software in direct opposition to this Court's order and in providing only part of code to the escrow agent make it clear that, unless they are stopped, Defendants will do whatever they can to continue to illegally make use of GeoLogic's code.

## II.   STATEMENT OF FACTS

### A.   Background Facts

This matter arose out of two former employees of GeoLogic, Defendants Alan Williams and Mark Williams (collectively referred to herein as "Williamses"), quitting their work for GeoLogic, taking GeoLogic's code and using it for their new companies, Defendants AMW Group, LLC, AMW Machine Control, Inc. ("Defendant AMW") and AGPS[1].  Throughout five years of litigation of this matter,

---

[1] It is our understanding that the Williamses no longer have any ownership interest in AGPS

3

GeoLogic was forced to repeatedly waste time and money addressing the Defendants' unsubstantiated arguments[2] and attempts to delay this matter[3].

Following the parties' cross motions for summary disposition, this Honorable Court ruled that Defendants Alan and Mark Williams breached their Employment, Confidentiality and Non-Competition Agreement with Plaintiff GeoLogic. (**Exhibit 2**, Order dated September 17, 2015, Doc #155). This Honorable Court found that the code that was created by Defendants Alan and Mark Williams during the ten years that they worked for GeoLogic is owned by GeoLogic. (**Exhibit 3**, Hearing Transcript, pg 18, ln 23-24). This Court found that the Defendant Alan Williams admitted that he used that GeoLogic code after he left GeoLogic. (**Exhibit 3**, pg.

---

[2] Defendants' chameleon-like arguments have changed numerous times in this matter. Defendants first denied in their Answer that they took the software at issue in this matter when they left the employ of Plaintiff. (Doc #58, Answer to Third Amended Complaint, ¶29, p. 10). That argument changed when, in answer to interrogatories, Defendant Alan Williams admitted that he has possession of software code that he wrote while an employee of Plaintiff. In the very same answers to Interrogatories, Defendants then attempted to argue that Plaintiff did not own the copyright to the source code, just the executable code. That argument was finally abandoned, but only after Plaintiff informed Defendants that the law clearly treats source code and executable code as translations of each other and, therefore, as the same thing. *Syntek Semiconductor Co., Ltd. v Microchip Tech. Inc.*, 307 F.3d 775, 779-80 (9th Cir 2002); quoting Compendium of Copyright Office Practices, § 321.03. ("Source code and object code are 'two representations of the same computer program. For registration purposes, the claim is in the computer program rather than in any particular representation.'").

[3] Defendants have done everything from producing over 70,000 documents, most of which were completely irrelevant and included junk mail and pornography, to refusing to produce witnesses for depositions on the eve of the scheduled deposition.

18, ln 25).  The Court also found that even if Alan Williams may have created code before and after working with GeoLogic, that is not a defense to the breach of the contract.  (**Exhibit 3**, pp 18:25-19:6).

After those rulings, GeoLogic filed a motion for an injunction, which this Honorable Court granted on the record.  However, before the order of injunction could be put in place, four (4) of the Defendants, Alan Williams, Mark Williams, John D. Maclean and Defendant AMW filed for bankruptcy, which were also filed just days before trial was to begin in this matter.  The bankruptcies of both the Williamses were both dismissed without either receiving relief from the bankruptcy courts.

## B.    <u>Injunction</u>

After seven (7) months of fighting in the four (4) separate bankruptcy proceedings, GeoLogic was able to obtain court approval to return to this Court and seek entry of the injunction, which was entered on November 22, 2016.  [Doc #191]. The Order for Permanent Injunction ("Injunction") specifically provide:

> "IT IS FURTHER ORDERED that Defendants Alan Williams and Mark Williams, directly or indirectly, individually or through any entity in which they hold an interest of any kind, or complete work for, are hereby permanently enjoined from using, selling, editing, licensing, servicing, trading or otherwise using in their trade or business, Plaintiff's Code."

[Doc #191, p. 3]. Plaintiff's Code was defined in the Injunction as code written by the Williamses during their employment at GeoLogic. Id. Further, the Injunction orders:

> "IT IS FURTHER ORDERED that Defendants Williamses present Plaintiff of a copy of the source code and the executable code of any commercial software offered for sale by the Williamses or any entity in which the Williamses own an interest, by December 1, 2016, so that the Plaintiffs may verify that the Plaintiff's Code has been expunged."

[Doc #191, p. 4]. The injunction went on to require additional productions by the Defendants every quarter, and then every six (6) months. Id.

Shortly after the entry of the Injunction, Defendants professed an interest in trying to settle this matter. As a result, after long negotiations, the parties entered a settlement agreement that was approved by the bankruptcy court which was handling the AMW Machine Control, Inc. bankruptcy[4] on February 8, 2017 ("Settlement Agreement"). (**Exhibit 1**, and **Exhibit 4,** Settlement Agreement with Exhibits).

Pursuant to the Settlement Agreement, the Defendants were to pay GeoLogic Two Million Dollars ($2,000,000.00) over a seven (7) year period, with the first payment due to Plaintiff on or before December 31, 2017. (**Exhibit 4**, pp. 1-2). In exchange for payments over time, Defendants agreed to give GeoLogic a security interest in "the software presently known as 'AMW Works,' whether in source code,

---

[4] By then the Williamses bankruptcy cases had been dismissed and Defendant John D Maclean had reached a settlement with GeoLogic, so court approval was only required in the AMW Machine Control, Inc. bankruptcy proceeding.

object code, executable code, executable format, or otherwise, and any and all modules, improvements, revisions, upgrades, enhancements, and modifications thereto, including all future revisions, upgrades, enhancements and modifications (collectively referred to as 'Software')." (**Exhibit 4**, ¶¶ 3 and 8, pp. 3-4). The Security Agreement, which was part of the Settlement Agreement, required that GeoLogic agreed to first seek strict foreclosure on the software. (**Exhibit 4**, Security Agreement attached to Settlement Agreement as Exhibit D, ¶ 7c, p. 4).

Pursuant to the Settlement Agreement, Defendants were required, within 30 days of the Settlement Agreement being entered and approved by the bankruptcy court, to place the Software in escrow with the Escrow Agent, Dan Aleksynas, and provide quarterly deposits of the Software with all updates. (**Exhibit 4**, ¶ 8, p. 4). Despite that requirement, it took Defendants nearly 6 months from the time the Settlement Agreement was approved by the Bankruptcy Court to provide any code to the escrow agent and another two (2) months to pay the escrow agent his retainer. (**Exhibit 5**, various correspondence between counsel and escrow agent regarding escrow production). When the Defendants finally produced code to be escrowed on August 29, 2017, what they produced was not sufficient. After more correspondence with Defendants, Defendants finally deposited additional code with the escrow agent on November 6, 2017. Id. That deposit was also insufficient in that the executable

code produced would not execute.  Defendants deposited a third collection of code with the escrow agent on or about February 7, 2018.  Id.

The Settlement Agreement also provided that an order be entered staying the Injunction, but Plaintiff could enter an Order Reinstating Injunction immediately following a breach by Defendants.  (**Exhibit 4**, ¶ 4, p. 3).

### C.    Defendants' Breach of the Settlement Agreement

Defendants failed to make even the first payment required under the Settlement Agreement.  As a result, GeoLogic sent out notice of strict foreclosure of the Software.  (**Exhibit 6**, notices of strict foreclosure dated February 2, 2018).  None of the Defendants objected to the strict foreclosure of the software. (**Exhibit 7**, Heed correspondence date March 16, 2018).  As a result, GeoLogic became the sole owner of the Software on or about February 23, 2018.

GeoLogic also submitted the Order Reinstating Injunction to this Court, and it was entered on March 1, 2018.  [Doc # 195].  Thus, as of March 1, 2018, the Injunction was no longer stayed and Defendants were again prevented from supporting or selling Plaintiff's Code, and they no longer had any ownership interest in AMW Works.

After foreclosing on the Software, GeoLogic sought the release of the software that had been escrowed.  (**Exhibit 8**, March 2, 2018 letter seeking release of escrowed software with acknowledgement of receipt of same).  No Defendant

objected to the release of the escrowed software.  On April 5, 2018, GeoLogic finally

obtained the escrowed software, only to discover that despite different productions

to the escrow agent, Defendants had failed to escrow a complete copy of the

Software.

Yet again, Defendants acted in bad faith.  The software that Defendants placed

in escrow had been stripped of several key parts and further did not include the most

recent version of the Software.  (**Exhibit 9**, Affidavit of Charles Julian with attached

exhibits, including list of missing items).  Some of the code that is missing from the

escrowed software, includes, but is not limited to, the license interpretation file, the

license generator, code compilers, various libraries and the most recent version of

all of the code.  Id.

The license interpretation file is what would allow GeoLogic to license the

Software, i.e. make any commercial use of the Software.  Id.  That file, bvsite2.pro,

is completely missing from the software placed into escrow by the Defendants.  Id.

That file is necessary to authorize any use of the Software.  Id.  Defendants' only

possible reason for stripping that file from the escrowed software is to prevent

GeoLogic from making any use of the Software, software that GeoLogic now owns.

Further, Defendants failed to include the license generator.  Id.  The license

generator is what allows third parties to obtain a license for the Software.  Id.  The

license generator works with the license interpretation file to enable the owner of the

Software to issue licenses.  Id.  Without the license generator, GeoLogic is prevented from having any benefit of the Software that it owns.  Id.

The compilers that Defendants failed to include are what allows the Software to be converted from source code, the instructions of the programmer, to executable code, the software the end-users see.  Id.  Again, without the compilers, GeoLogic cannot make use of the Software.  Id.  The libraries that Defendants stripped from the escrowed software also make it impossible for GeoLogic to make use of the Software that it owns.  Id.  While GeoLogic is attempting to recreate the missing files, Defendants' actions stripping the code of key components is costing GeoLogic tens of thousands of dollars in additional work and untold amounts in lost sales.  Id.

### D.   **Defendants' Continued Sale and Support of Software**

After this Court entered the Order Reinstating Injunction, Defendants have continued to sell, support and otherwise provide access to Plaintiff's Code. GeoLogic learned that Defendants continued to issue licenses for AMW Works, code no longer owned by Defendants, after March 1, 2018.  On April 19, 2018, Charles Julian had a conversation with Christopher Markwardt, an employee of Rust Sales, Inc, which is a dealer for Defendant AMW.  (**Exhibit 9**).  Mr. Markwardt informed Mr. Julian that he had been able to obtain a license of the Software on March 27, 2018 from the Defendant AMW's online license generator.  Id.  Mr. Markwardt also forwarded GeoLogic certain pictures of the confirmation of the

issuance of a new license of the Software.  Id.  The screen shots sent by Mr. Markwardt match the layout what Defendant AMW's online manual shows those pages will look like.  Id.

GeoLogic has also learned that on April 23, 2018, Tim Johnson, owner of Matrix Control Systems, Inc. ("Matrix"), another dealer for Defendant AMW, was able to activate a license for AMW Works from Defendant AMW.   (**Exhibit 10**, Affidavit of John Wagner).  In fact, John Wagner, President of Agreplan LLC, a former dealer for Defendant AMW, was able to remotely digitally record as representatives of Matrix went online to amwonlineservices.com and were able to license AMW-Dirt, a module of AMW Works, software that Defendants do not own. Id.  While attempting to license the software, Jake Johnson, another representative of Matrix, needed to call Bill Homrich, a representative of Defendant AMW, for assistance, which he provided. Id.

In addition to the above two incidents, it is clear from Defendant AMW's websites that they are still selling and supporting the Software.  (**Exhibit 9**). Further, representatives of GeoLogic have heard from contacts in the industry that Defendant AMW is clearly still selling and supporting the Software.  Id.  As a result, there is no doubt that Defendants are violating this Court's Injunction.

Further, as Defendants have never produced all of the commercial software that they are selling, apart from the portion of the Software placed in escrow,

11

Defendants are further in violation of the Injunction. GeoLogic has learned from Defendants that they intend to sell some software and/or Defendant AMW to a third party. As GeoLogic has not been able to inspect the software that Defendants intend to sell, it is not clear whether that software would be code that the Defendants do not have a right to sell.

## III.   STATEMENT OF LAW

### A.   Enforcement of Settlement Agreement

Public and judicial policies favor settlement. *Steel v Wilson*, 29 Mich.App. 388, 395, 185 N.W.2d 417 (1971). Compromise and settlement are favored over litigation as method of resolving disputes. *Clinton St. Bethlehem Church v City of Detroit*, 484 F.2d 185 (6th Cir 1973). "Law and public policy favors settlement of disputes without litigation, and settlement agreements will accordingly be upheld whenever possible." *Echol v Nimmo*, 586 F.Supp 467 (DC Mich 1984).

District Courts have broad inherent power to enforce settlement agreements in litigation pending before them. *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988) (citing *Aro Corp. v. Allied Witan Co.,* 531 F.2d 13658, 1371 (6th Cir.), cert denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed. 2d 140 (1976)). As the 6th Circuit stated:

> "[i]t is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.)(citations omitted), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50

12

> L.Ed.2d (1976).  See also *Kukla v. National Distillers Prods. Co.,* 483
> F.2d 619, 621 (6th Cir. 1973).  A federal court posses this power even
> if that agreement has not been reduced to writing.  *Bowater N. Am.*
> *Corp. v. Murray Mach.,* 773 F.2d 71, 77 (6th Cir. 1985) (citing
> *Odomes v. Nucare, Inc.,* 663 F.2d 246, 252 (6th Cir. 1981)."

*Id*., at 154.

A District Court's authority to enforce settlement agreements is both inherent and equitable in nature.  *Bowater N. Am. Corp. v. Murray Mach.,* 773 F.2d 71, 76 (6th Cir. 1985).  And the District Court's authority to do so furthers the policy of "favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Liberty Mutual Ins. Co.,* 483 F.2d 619, 621 (6th Cir. 1973).  A court "should hesitate to decline to enforce a working settlement agreement." *G.G. Marck and Associates, Inc. v. Peng*, 309 Fed. Appx 928 (6th Cir. 2009).

A settlement agreement is governed by the principles of contract law. *Bamerilease Capital Corp. v Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992).  In order to determine whether a valid contract was formed between the parties, the Court must look to the contract law of the state. *Id* .

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v. Continental Ins. Co.,* 473 Mich. 457, 464; 703 NW2d 23 (2005). "If the language of [a] contract is unambiguous, we construe and enforce the contract as written." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.,* 469 Mich. 362,

375; 666 NW2d 251 (2003).

In this matter, there should be no question that there is a valid and enforceable contract between the parties, as all parties signed the Settlement Agreement, and it was approved by the United States Bankruptcy Court for the Western District of Michigan.  (**Exhibits 1** and **4**).  Further, there is no ambiguity in the Settlement Agreement.  The Security Agreement, that was part of the Settlement Agreement, specifically provides:

> Defendants and Pulsar hereby grant to GeoLogic a security interest in:
>
> a.  All right title and interest in and to the computer software presently known as "AMW Works," whether in source code, object code, executable format, or otherwise, and any and all modules, improvements, revisions, upgrades, enhancements, and modifications thereto, including all future revisions, upgrades, enhancements and modifications (collectively referred to as "Software").
>
> b.  All proceeds received by any of the Defendants or Pulsar in connection with any sale or disposition of ownership (including transactions such as exclusive licenses, which include a transfer of substantive ownership rights) of the Software.   For clarity, this provision does not apply to proceeds related to hardware nor does it apply to the sale or lease of Software in the ordinary course of business, including, without limitation, all cash, checks, drafts, accounts receivable, chattel paper, leases and instruments.  All of the foregoing properties and assets of the Defendants and Dealer mentioned in these sections 1(a) and 1(b) are referred to collectively in this Agreement as the "Collateral".

(**Exhibit 4**, Exhibit D, p.1, ¶1).

The Security Agreement also provides that if Defendants defaulted on the Settlement Agreement:

> "Defendants and [Pulsar] shall not have any further rights in the Software and may not use or sell or license or otherwise dispose of the Software or any part thereof and GeoLogic shall immediately have an exclusive world-wide license to the Software, with full rights to sublicense and modify the Software, and Secured Party may thereafter use, resell, or license such Software, or any part of it, or any combination of the foregoing."

(**Exhibit 4**, Exhibit D, p.4, ¶7a).  The Security Agreement further provides that GeoLogic is entitled to all attorneys' fees, costs and expenses in having to protect and enforce its rights under this Agreement.  Id. p. 5, ¶8.

The Escrow Agreement, which is also part of the Settlement Agreement, provides that:

> "Within 30 days of the Effective Date, [Pulsar] and Defendants shall deposit with the Escrow Agent *complete compilable* copies of the up-to-date versions of the source code underlying the Software (as defined in the Settlement Agreement) and copies of the up-to-date versions of the executable Software, including all comments and variable names in their original form. . . . These items shall be referred to as the 'Escrow Items.'"

Emphasis added. (**Exhibit 4**, Exhibit E, pp.1-2, ¶1).  The Escrow Agreement also requires that Defendants deposit up-to-date versions of the Escrow Items on a quarterly basis.  Id.

There is no question that Defendants have breached the Settlement Agreement.  Defendants never made any payment as required by the Settlement

Agreement.  Defendants have never escrowed code that could be compiled from source code into executable code.  In fact, Defendants purposely stripped the files that would allow GeoLogic to compile what they deposited in escrow. (**Exhibit 9**). Defendants also purposely stripped the very files that would allow GeoLogic to license the code.  Id.  The Exhibit A attached to **Exhibit 9** lists all of the files that GeoLogic has so far been able to identify as missing from what Defendants deposited in escrow.  Clearly, Defendants never escrowed the complete Software.

Defendants also breached the Settlement Agreement by continuing to license and support the Software, after it was foreclosed on by GeoLogic.  Defendants have taken sales from GeoLogic.  As a result, GeoLogic is entitled to all profits from any and all sales of Defendants since the Software became the Property of GeoLogic on February 23, 2018.  The Security Agreement also gave GeoLogic in all sales of the Software.

As a result of Defendants numerous breaches of the Settlement Agreement, it is clear that Defendants have no intention of providing the Software to GeoLogic and will continue to license and support the Software, despite the fact that they do not own the Software.  GeoLogic therefore requests that this Honorable Court (1) award GeoLogic all sale proceeds Defendants have received since January 1, 2018, when Defendants defaulted under the Settlement Agreement; (2) award GeoLogic all of its attorneys' fees, costs and expenses since the Settlement Agreement became

effective; (3) appoint a receiver to take possession of all of the Software in possession of Defendants as further discussed in Section C below; and (4) grant any other relief this Court deems just.

### B. Defendant's Violation of the Injunction

It is well-established that federal courts possess the inherent ability to sanction non-compliance of their orders through contempt of court findings.  The United States Code provides, in relevant part: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." *See* 18 U.S.C. § 401.

In order for court to hold a person in contempt, "the movant must produce clear and convincing evidence that shows that [the contemnor] violated a definite and specific order of the court with knowledge of the court's order." *Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003); *see also U.S. v. Cunningham,* 599 F.2d 120 (6th Cir. 1979).  "Once the movant establishes his prima facie case, the burden shifts to the contemnor." *Elec. Workers Pension Trust Fund, supra,* 340 F.3d at 379.

If contempt is established, federal courts may order fines and payment of attorneys' fees, as well as other measures to obtain compliance with the violated order.  "Judicial sanction can be used not only to coerce compliance, but also to

17

compensate the complainant." *Id.* at 385; *see also Cunningham, supra,* 599 F.2d at 120 (jail sentence upheld).  Where a permanent injunction is violated, "the interest in enforcement consists not only of the need to maintain respect for court orders and for judicial procedures, but also of the need to avoid repetitious litigation." *N.L.R.B v. Local 282, Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 428 F.2d 994 (2nd Cir. 1970).

Not only have Defendants violated the Settlement Agreement, but Defendants have also violated this Court's order.  On March 1, 2018, this Court reinstated the Injunction.  [Doc # 191 and Doc # 195].  That Injunction prevented the Williamses and Defendant AMW from "from using, selling, editing, licensing, servicing, trading or otherwise using in their trade or business, Plaintiff's Code." [Doc #191, p. 3].  Defendants has have clearly not stopped using, licensing and servicing Plaintiff's code.

Defendants, on at least two (2) occasions that we know of, have issued new licenses for the Software.  On April 19, 2018, Charles Julian, President of GeoLogic, had a conversation with Christopher Markwardt, an employee of Rust Sales, Inc, which is a dealer for Defendant AMW.  (**Exhibit 9**).  Mr. Markwardt informed Mr. Julian that he had been able to obtain a license of the Software on March 27, 2018 from the Defendant AMW's online license generator.  Id.  Mr. Markwardt also forwarded GeoLogic certain pictures of the confirmation of the issuance of a new

license of the Software.  Id.  The screen shots sent by Mr. Markwardt match the layout what Defendant AMW's online manual shows those pages will look like.  Id.

GeoLogic has also learned that on April 23, 2018, Tim Johnson, owner of employee of Matrix Control Systems, Inc. ("Matrix"), another dealer for Defendant AMW, was able to activate a license for AMW Works from Defendant AMW. (**Exhibit 10**, Affidavit of John Wagner).  In fact, John Wagner, President of Agreplan LLC, a former dealer for Defendant AMW, was able to remotely digitally record as representatives of Matrix went online to amwonlineservices.com and were able to license AMW-Dirt, a module of AMW Works, software that Defendants do not own.  Id.  While attempting to license the software, Jake Johnson needed to call Bill Homrich, a representative of Defendant AMW, for assistance, which he provided.  Id.

Not only can dealers continue to obtain licenses from Defendant AMW's online license generator, but representatives of Defendant AMW are still assisting them with obtaining licenses!  Further, Defendant AMW's website makes it clear that Defendant is still selling AMW Works, despite the Injunction being in place. (**Exhibit 9**).  Every module of AMW Works is still listed as a product for sale.

Finally, Defendants have failed to provide GeoLogic with copies the source code and executable code of any commercial software offered for sale by the Williamses and/or Defendant AMW.

As a result, GeoLogic has provided clear and convincing evidence that Defendants have violated the Injunction. Defendants must be found in contempt. GeoLogic requests that this Court (1) award GeoLogic the proceeds from all sales by Defendants since the Injunction was reinstated on March 1, 2018 to compensate GeoLogic for its lost sales; (2) award GeoLogic all attorneys' fees, costs and expenses incurred since March 1, 2018 to compensate GeoLogic for its costs incurred as a result of Defendants' actions; (3) appoint a receiver as discussed in Section C below in order to prevent the continued violation of the Injunction; and (4) grant any other relief this Court deems just.

### C.    <u>**Appointment of a Receiver is Appropriate**</u>

Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver. Fed.R.Civ.P. 66. The "district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir.2006). "[T]he form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241 (5th Cir.1997)(quoting 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973)).

In a 2014 Opinion, Judge Lawson of United States District Court, Eastern District of Michigan found:

"District courts have considered a number of factors when determining whether to exercise their discretion to appoint a receiver, including (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership."

*PNC Bank, Nat. Ass'n v. Goyette Mechanical Co., Inc.*, 15 F.Supp.3d 754 (E.D. Mich. 2014); citing *Fed. Nat. Mortgage Ass'n v. Mapletree Investors Ltd. P'ship*, 10–CV–10381, 2010 WL 1753112, at *3 (E.D.Mich. Apr. 30, 2010) (citations omitted).

Like the *PNC Bank* case, the balance of the factors weigh in favor of appointment of a receiver.

In this matter GeoLogic has already succeeded on the merits, in that a permanent injunction has already been entered by this Court. Further, Defendants do not dispute that they defaulted under the Settlement Agreement. In fact, counsel for Defendants admitted that GeoLogic had properly foreclosed on the Software. (**Exhibit 7**).

Defendants' actions in this matter in violation of the Injunction and the Settlement Agreement make it clear that any other legal remedy would be inadequate. "The appointment of a receiver may be appropriate when other

approaches have failed to bring about compliance with the court's order." *Band v. Livonia Associates,* 176 Mich.App. 95, 105, 439 N.W.2d 285 (1989) (citing *Petitpren v. Taylor School Dist.,* 104 Mich.App. 283, 294, 304 N.W.2d 553 (1981)). Defendants have shown that they will continue to sell the Software that they do not have any interest in, despite the Injunction and despite the Settlement Agreement that Defendants entered into. Defendants took GeoLogic's software despite an employment agreement. Defendants continued to sell that software despite an injunction. All other legal remedies have failed.

Further, Defendants have purposefully acted to prevent GeoLogic from being able to have access to the Software, despite the Settlement Agreement. They stripped files from what they placed in escrow to make it worthless. GeoLogic has incurred expenses in the tens of thousands of dollars trying to recreate what the Defendants stripped from the code. No other legal remedy has had any effect on Defendants' actions, so all that is left is the appointment of a receiver.

The weighing harms also favors appointment of a receiver. As Defendants do not own the Software any longer, there can be no harm to Defendants. Defendants should not have possession of any of the Software that GeoLogic now owns. Further, even if Defendants claim to own some software that GeoLogic does not own, which GeoLogic does not believe, Defendants are required to produce all software to GeoLogic under the Injunction, which Defendants failed to do. Having

a receiver take possession of the software will give GeoLogic an opportunity to examine any such claim of Defendants.  The harm to GeoLogic far outweighs any harm Defendants can claim.  Further, Defendants are the ones to have caused any harm, by failing to comply with the Settlement Agreement and Injunction.  GeoLogic has been denied access to the software it owns. GeoLogic has been unable to sell the software that secured Defendants payments under the Settlement Agreement.  To allow Defendants to have continued access to GeoLogic's code would cause GeoLogic's damages to increase every day.

It is clear that all factors support the appointment of a receiver in this matter.  Therefore, GeoLogic requests that a receiver be appointed to (1) take possession of all code and software in possession of Defendants Alan Williams, Mark Williams, AMW Machine Control, Inc., AMW Group, LLC, or any other entity the Williamses hold an interest, or any of their representatives; (2) take over any online presence of Defendants Alan Williams, Mark Williams, AMW Machine Control, Inc., AMW Group, LLC, or any other entity the Williamses hold an interest, including the AMW license generator; (3) turn over to GeoLogic all of the Software; (4) take possession of all sale proceeds Defendants have received since January 1, 2018; (5) prevent the sale of any software and/or interest in software by Defendants until GeoLogic has an opportunity to confirm that what Defendants are attempting to sell is not infringing software; and (6) take any other actions necessary to enforce the

Injunction and the Settlement Agreement.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff, GeoLogic Computer Systems Inc., respectfully requests that this Court provide the following relief:

A.    Grant Plaintiff's Motion For Order of Contempt for Violation of Injunction and Order Enforcing Settlement Agreement;

B.    Enter an order awarding GeoLogic all sale proceeds Defendants have received;

C.    Enter an order awarding GeoLogic all of its attorneys' fees, costs and expenses since the Settlement Agreement became effective;

D.    Enter an order appointing a receiver to:

(1) Take possession of all code and software in possession of Defendants Alan Williams, Mark Williams, AMW Machine Control, Inc., AMW Group, LLC, or any other entity the Williamses hold an interest, or any of their representatives;

(2) Take over any online presence of Defendants Alan Williams, Mark Williams, AMW Machine Control, Inc., AMW Group, LLC, or any other entity the Williamses hold an interest, including the AMW license generator;

(3) Turn over to GeoLogic all of the Software;

24

(4) Take possession of the proceeds of all sales by Defendants since January 1, 2018;

(5)   Prevent the sale of any software and/or interest in software by Defendants until GeoLogic has an opportunity to confirm that what Defendants are attempting to sell is not infringing software; and

E.     Grant such other and further relief as this court deems to be just and equitable.

Respectfully submitted,

KEMP KLEIN LAW FIRM
Attorneys for Plaintiff

/s/ Brian H. Rolfe P52480
Brian H. Rolfe (P52680)
Faith M. Gaudaen (P59469)
201 W. Big Beaver Road, Suite 600
Troy, MI  48084
Dated: May 7, 2018                      248-528-1111
906187

## Certificate of Service

I hereby certify that on May 7, 2018, I electronically filed the Plaintiff's Motion and Brief for an Order of Contempt for Violation of Injunction and Order Enforcing Settlement Agreement with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record

/s/Brian H. Rolfe
(248) 528-1111
brian.rolfe@kkue.com